Before I begin, the briefing and many of the documents in this case have been submitted under seal. After consulting with the government's attorney, we believe we can go forward, but we just do not intend to use the case agent's name in our argument. I intend to concentrate my oral argument on the first issue raised in the briefing, whether Mr. Harvey's motion to dismiss the indictment should have been granted based on outrageous government conduct. The principal action at issue in this case is the case agent's transmission of an internet link or URL to a profile page on yahoo.com. When that profile page appeared, it included an image of child pornography. This is a unique case and calls for unique measures. I must acknowledge that this court has not reversed a case based on outrageous government conduct in many, many years, but the defense still remains viable as recently as 2007 in United States v. Meyer. What is the right of the defendant specifically, not anyone that was involved in the link, but as to this defendant, what is his right to raise this claim? His due process right. His right involves the inducement that the magistrate judge found. There's a page 427 of the excerpt and 428 of the excerpt. In this chat, the agent and he have some discussions and frankly some real bad language is exchanged. And then the agent says, nice hop in a plane and we'll both have a good time. And he was trying to induce Mr. Harvey to come up and have sex with a fictitious child. But you're saying the outrageous government conduct is what, the sending of the link? The sending of the link and the effect the link had on Mr. Harvey. It induced Mr. Harvey to say that the, you know, right after they had the nice hop on the plane, they had a discussion. Oh, well, you might be a federal agent. You know, this is a very risky business. I'm not sure I'm willing to do this. And then the agent sent the link. And at that point, there's this pause. Well, obviously, Mr. Harvey clicks. You only need this one mouse click to pull up the profile page and the image, which is hardcore child pornography. And at that point, Mr. Harvey says, I'm convinced I would really like to have sexual relations with your granddaughter. So the due process right he has is the illegal activity of sending a link and the due process violation and the inducement for him to T to count one. Attempted sexual abuse of a minor requires an expression of intent or evidence of an intent. And the magistrate judge, in a very careful and well-reasoned decision, found that that induced Mr. Harvey, that the sending of an induced him to make this expression of intent to travel to Alaska to and made the state and made the government's case on attempted sexual abuse of a minor and count one. How did that really affect his ability to pursue an entrapment defense? It may be the entrapment defense is doomed to failure because it's it's impossible to avoid the predisposition reflected. It may be that he didn't necessarily trust who he was communicating with. And indeed, subsequent history shows he had skepticism and wanted to be assured that this wasn't a government agent. And so I can understand an argument that says maybe this gave him confidence this wasn't a government agent. But I don't understand how it offers up an entrapment defense. And the magistrate judge spoke in terms of your client being prejudiced because of that. And I just don't understand how that that flows. I want to make sure we're clear on there's two parts to the magistrate judge's opinion. One is the outrageous government conduct defense. And that is a due process defense. Then there's the supervisory powers and the supervisory powers. The elements of that are showing the outrageous showing the misconduct and also showing prejudice. But as far as the outrageous government conduct defense itself, that we our position is we did not have to show prejudice at trial. They don't have prejudice. The 28 J letter from the government recently identifying a case from this court in June, which appears to speak to that issue. And as I read it suggests that a due process claim also requires demonstration of prejudice. Well, that particular due process claim is distinguishable from the one Mr. Harvey is raising. That involves extra territory. And this is the United States versus Struckman. That involves the conduct of government agents outside the territorial boundaries of the I don't that is different than the than the misconduct involving outrageous government conduct defense in United States versus Hampton, which we rely on that. That case, I believe, is is based on United States versus Kerr and United States and I'm not and Frisbee, I believe. And it's a separate doctrine in the in the Hampton case, which was a pro plurality, excuse me, decision. Basically, Justice Powell, who did one of the opinions and found that the government, that the outrageous government conduct defense could be based on, for want of a better word, kind of malum and say type of conduct. And this this court uses has looked at Hampton and found that if the conduct of an agent is malum and say, and magistrate judge found that this conduct was not only malum and say, but blatantly illegal, that outrageous government conduct could be established. So I don't I don't read. I think Struckman is distinguishable on the outrageous government conduct. I think most of the discussion were involving prejudice. Again, Struckman involved both both supervisory power and outrageous government conduct discussion. Well, so does this case. I mean, you offered up the argument both ways. And I have it is true. The facts of Struckman are different. But how is the concept of outrageous government conduct is something that empowers the court to to dismiss an indictment different? I mean, the facts of the outrageous conduct are certainly dissimilar. In that case, they weren't talking about sending a child porn link. They were talking about what was done to get somebody brought into the United States. But underneath, we've got this issue, which you clearly identified as whether prejudice is required for a due process argument. Struckman appears to suggest, yes, although it doesn't discuss it in terms as as as clear as it might. I take it you don't think I mean, you've you said as much. You don't think Struckman imposes or holds that a showing of prejudice is required or outrageous government conduct. Well, it does speak about outrageous government conduct. If you look at that case, it's got clear headings separate immediately under the quotation that comes under a heading shocking, outrageous government conduct. And the next section is dismissal using supervisory powers. So Struckman clearly talks about both. And this reference to prejudice appears in the shocking, outrageous government conduct, which in their cases characterizes a jurisdictional challenge, but a due process challenge. So, again, I understand the factual context is different, but I'm not sure there's anything that really tells me that Struckman shouldn't be read to require prejudice. And if it is read to require prejudice, and this is really the question I'm mean to pose to you now, where was the prejudice to your client from this conduct? Yeah, the prejudice that the magistrate judge found, which we rely on, and it's found in excerpt pages 479 and going beyond that in her decision, what involved mostly, in two parts, to the substantial prejudice to Harvey in the grand jury phase of the proceedings. The magistrate judge followed this court's decision in Isgro, and that return was based on a United States Supreme Court decision called Bank of Nova Scotia. In those decisions, the court looked at prejudice as it applied to grand jury proceedings. And basically, the magistrate judge concluded that, and her conclusions are based on kind of, there wasn't a lot of factual disputes in this case, and the district court didn't hold another evidentiary hearing, but just based its decision on the facts, that the grand jury proceedings were affected. And I would rely mostly on that part of the magistrate judge's prejudice findings, the prejudice at the grand jury. And it's true, I have to, Mr. Harvey, at trial, did not raise an entrapment defense, and the magistrate judge later on looked at, found prejudice at a possible entrapment defense that he might raise at trial, and he didn't raise one, so I have a problem there. But I think my strongest argument is the outrageous government conduct defense in this case. Thank you. Can I save some time for rebuttal? Yes, you may. Thank you very much, Your Honor. You have about three and a half minutes. Good morning. My name is Kim Sayers-Fay, and with me at counsel table is Steve Skrocki. Mr. Skrocki and I were trial counsel together, and it's our privilege to represent the United States. Imagine telling a child pornography victim, in the course of a law enforcement investigation, an agent sent your sexually explicit photo to a man who apparently had an interest in traveling here to have sex with a five-year-old. I think that would be a very difficult conversation. But imagine telling that same child pornography victim, we were so offended by that agent's transgression of your right to privacy and your dignity, that we let that man go. Now that, I would submit, would be outrageous. And that, in a nutshell, I think is why Harvey's argument on appeal fails. As Judge O'Scanlan, as your question got to, there is no harm here to Harvey. There is no violation of Harvey's due process rights, which is not to say that there wasn't misconduct. We have conceded that in our brief. Certainly, the action was unwanted. It was a misjudgment. But that misjudgment should not redound to the benefit of a pedophile, the same type of pedophile who victimized the young woman in the picture. It would really be victimizing her again. In a broad sense, that same question is raised every time the exclusionary rule kicks in. Because the exclusionary rule excludes evidence, often very compelling, uncontestable evidence. It excludes evidence from a trial and sometimes lets the guilty go free, because otherwise the risk in the future of police misconduct of whatever nature is there. I look at this case and I wonder, well, okay, if the agent successfully obtains, I mean, hooks somebody with that date and we get a conviction, then isn't that exactly what the exclusionary rule is intended to prevent happening in the future? Why isn't there inducement there? Why isn't there incentive for an agent to go ahead and do the same thing again in the future? Because look what he gets as a result. Well, I think the last part of your question, Judge Clifton, hit it on the head. Look what he gets as a result. In this particular case, the evidence in the trial was that the result for the agent was quite palpable and painful. As the agent testified, he was yelled at from everybody from the top down. Numerous people at the U.S. Attorney's Office. So many times I can't even care to count, and I've been reprimanded about sending that link. That was just what the jury heard. It's also in the record that the agent was referred to the Office of Professional Responsibility within ICE. The agent was even referred for review for potential criminal prosecution to the U.S. Attorney's Office for the Western District of Washington. And the agent was advised of his rights while testifying at the evidentiary hearing. So the consequences for the agent were severe in this case. And I would submit that no agent in his or her right mind would replicate that conduct thinking that this might pay off. I also think that the law contemplates a solution for that problem. And certainly the court has the power under the supervisory powers to deter conduct on behalf of agents when it has been, for example, repetitious, which it has not been in this case. And importantly, where there is no less drastic remedial action available, which simply isn't the case here. The court endorsed a suppression remedy. It suppressed the photo itself and it suppressed the very vivid response by the defendant that was not used at trial. Are you conceding that the defendant's rights were somehow violated here? Absolutely not. In fact, the court endorsed a remedy for suppression that was at our suggestion using a belt and suspenders approach. Frankly, the evidence in this case was so overwhelming that there was no need. But you seem to be saying, well, it was overwhelming and there were lesser remedies. But that seems to be conceding that the defendant somehow had his rights violated by the use of this, in the same sense that someone who is the victim of an unreasonable search has had his consequences. And I don't mean to concede that at all. Well, in fact, the first prong, and at least under the supervisory powers, there must be substantial prejudice. And we have argued vehemently that there is no substantial prejudice to Harvey. Certainly in the course of that discussion over with the agent, whether Mr. Harvey was going to come to Alaska, Harvey was very- Is that the same question? I'm sorry, I don't mean to- You can have a search that doesn't result in any prejudice because nothing is found, but it's still unreasonable. You can sue for it. Right. In this case, there is no harm to Harvey at all. His rights are not abridged in the same way I would submit those rights are. The victim. She has a right not to have her photo- The child. The child. Victim. Yes, excuse me. The child has a right not to have her photo disseminated without her permission for whatever purpose. Perhaps she would have signed off on this purpose. Perhaps not. But she had the right to make that decision. But that abridgment of her rights is entirely separate and distinct from the run-of-the-mind search case where there is a suppression issue. If they, for example, in a drug case, if you don't get an appropriate search warrant and you come in and that evidence is suppressed, that is a different type of violation which is much more personal to the defendant. Here, there is nothing personal to the defendant at all. The only sort of foul or violation of the rights was vis-à-vis the child victim depicted in the photo. Well, is it, how is this kind of an operation supposed to be undertaken? What should the agent have done here? That, Your Honor, is really a ten million dollar question. And to be frank, the technology has really outpaced, I think, the ability of law enforcement to keep up. And part of the issue in this case is at the time of this investigation, there were not clear standards as to whether one can use those photographs from a policy perspective. From a legal perspective, it's absolutely clear based on Mitchell that there is no wrong involved in sending a picture of child pornography, actual child pornography, to someone to test his or her interest in that type of contraband. So I know that I believe it's outside the record, but I believe other agencies have some photos that are approved for this purpose. But, again, that's very, very difficult. Because the folks who engage in this trade online are savvy to sort of the doctored photo from 20 years ago. And it is always an investigatory effort to catch up and stay ahead. So in a sense, so you seem to be saying that because the technology is difficult to make it look real, so they used the real and they got him, that seems to suggest that he did have some personal injury as a result of this. I don't think... Because you seem to be suggesting that he would have received something that looked doctored. I'm not sure if it would have looked doctored. I think there is some use in the investigatory community of dated photos because you have to get someone's permission as an adult. So by the time a woman reaches the age of 18, her photo when she's six is quite old. But I think what you're getting at there is, is it inherently unfair to Mr. Harvey to send him something that is real, that is perhaps current? We're really not sure when this photo was taken. Perhaps it's 10 years old, but let's assume that it's current. Is it unfair to entice him, if you will, with that photo, the real McCoy? And Mitchell speaks to that issue. Absolutely not. That is precisely what they did in the Mitchell case. They sent a magazine toward Tots and he was convicted, and this court upheld that conviction, for receipt of that very same child pornography. And implicit in that conviction, of course, is that those were real children, presumably without their permission as well. I thought Toward Tots was a real magazine. I believe it was. A real magazine with real child victims. Is it significant here that the link was to a public website and not the sending of a piece of child pornography to this individual? It is significant only to the agent, and I think as a matter of policy, it is certainly significant because the ICE, I think, looks differently at the tactical decision about whether to send that because of the obvious ramifications of sending a link, sending something that exists in cyberspace, versus sending a magazine which, as they did in Mitchell, they could obtain after the fact. So it has different policy ramifications. It doesn't have any different legal ramifications because the whole point of Mitchell, implicit in Mitchell, is there is nothing wrong with sending real child pornography to an alleged pedophile to determine whether he or she really has that interest. It is the same as selling real cocaine to a drug dealer. Obviously, different policy ramifications. But the magazine exists independent of it being sent to this person. It wasn't invented for just, it didn't get into commerce just as a result of the law enforcement agency. Nor did it here, either, because this particular image was actually sent to the law enforcement agent by another suspect. It's referred to in the record as bad babysitter. So this was something that existed. It was out there, unfortunately, as someone's Yahoo profile page. So it is not something that the agent created, certainly, or somehow put into the currency of cyberspace as the only person to do so. That's just not the case. And in that case, I think it's, for that reason, very much analogous to the magazines, just the modern iteration, unfortunately. I have a question. You mentioned this agent was from ICE, the Immigration and Customs Enforcement people. This is the first occasion I've seen of an ICE agent pursuing a pornography case. Was the defendant here an alien? No, no, Your Honor. And I believe this is something that I've learned, that child pornography and child exploitation crimes are the bailiwick of ICE. And here in Alaska, they are the principal investigation agency. Is that by statute? I believe it's because of the customs. Initially, child pornography, of course, much of it did come in from foreign countries when it was back in print media. And I believe as customs evolved into ICE in, I think, 2005, that core competency remains the same. They still are the principal federal agency to investigate child pornography crimes. And in this case of this particular agent, he has been doing child exploitation crimes and child enticement cases for more than ten years. So this is really their bailiwick. Judge Clifton asked an interesting question about whether prejudice is required under the due process manner of proceeding to dismiss a case or dismiss an indictment for outrageous government conduct. I think, Judge, that it is. When one looks, for example, at the Supreme Court's decision in Painter, there is a mention of plainly it has to be shocking and outrageous to the universal concepts of justice. And there is a mention of that being, of course, under the due process clause. So I find it hard to conceptualize of something that would be shocking and outrageous to the universal concept of justice and that would meet what this Court has called the extremely high standard that would not, therefore, be prejudicial. So certainly if one can't meet the substantial prejudice criteria for the supervisory power, for invocation of the supervisory power, I can perceive of no way that this Court could possibly or that the defendant could meet the higher standard for invocation of the due process power, which, incidentally, has never been invoked successfully or been found to apply by the Supreme Court or by the Ninth Circuit, be really treading new ground. Is there any real difference between the two theories? At one point it looked like prejudice was clearly required for the supervisory power, perhaps not required for due process. Struckman appears to say it's a component of due process, although it doesn't cite anything or discuss it in any length. But if due process does require a showing of prejudice, is there really any difference between the two theories? I guess the difference that I can perceive is it's plain that to dismiss under the due process power, you have to have a due process violation. Under the supervisory powers, theoretically, this Court could dismiss for something less than that. It is not a due process violation, but it meets one of the other three criteria and is attended by substantial prejudice. So I think there is a potential there for a slight difference in the constitutional showing. But both require substantial prejudice is the common denominator, and it is even a greater showing under due process. So in this case, I think the defendant literally does not pass go. There is no substantial prejudice to him, and he ought not be able to trade off of the prejudice and the unfairness to a child pornography victim. Thank you. Thank you. Any further questions? Thank you. Your Honor, I'd first like to address the issue of the Mitchell, United States v. Mitchell case. The district court found that this case, concluded that this case was not applicable to this case. And basically, I'm referring to excerpt of record, page 491. And footnote 5, the district court said, the potential damage occasioned by posting of the profile page link was that it might be accessed by persons other than the defendant. In other words, it's posted on a public website. This is what sets this case apart from United States v. Mitchell. And in Mitchell, what happened was a controlled delivery. And what horrified the magistrate judge in this case was the lack of any control on this contraband. The government left this piece of child pornography up on a public website, having knowledge of it, for over nine months. And the magistrate found that that was shocking and horrible. Now, wait a minute. I don't understand that. The government put this on the website? No. There was another individual that this case agent was investigating called Bad Babysitter. Bad Babysitter sent in about three weeks before the contact with my client occurred, Bad Babysitter sent this link to the agent and also said, and I think this is critical, that Bad Babysitter said that he had actually had sex with the person who posted, who owned the profile page, his daughter. Had sex with his daughter or granddaughter, I can't remember which. But it's kind of like leaving a child in a very dangerous situation. I don't understand. What power did the agent have to affect the public website? The agent didn't control the website. Yeah. The agent very quickly took it down, well, not very quickly, but three weeks after it was noticed by an administrator subpoena to the Yahoo Corporation. This link was to a profile page that was owned and run by the Yahoo Corporation, and when they received the administrative subpoena, they obviously took it down right away. And that's in the record. I don't have the site for that. Yeah, well, I guess, let me go back for a moment. I'm not quite sure I understand your distinction of Mitchell, because I do understand that here this was accessible to lots of other people, whereas in Mitchell it was just mailed to the mailbox. But as far as your client is concerned, what's the difference? The fact that other people could access it doesn't... In Mitchell, it wasn't used, the child pornography wasn't used as bait in a way. It wasn't used to induce him, Mitchell, to... In this case, it was used to induce a defendant who was sitting in his bed, you know, steady in California to travel up to Alaska. In Mitchell, there was no sending of child pornography until the very last instant. The magazine was described, and then the government mailed it to him in a controlled way. They knew his post office box and had it done. So just very briefly with regard to the Painter case, I've addressed that in my reply brief. You have, and your time has expired. Thank you very much, Your Honor. Case to start, it is submitted for decision.
judges: Schroeder, O'scannlain, Clifton